# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In re LUXOTTICA OF AMERICA, INC. DATA SECURITY BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:20-cv-00908-MRB<br><br>(Consolidated with Case Nos. 1:20-cv-00983 & 1:20-cv-01011)<br><br><u>CLASS ACTION</u><br><br>Judge Michael R. Barrett<br>Magistrate Judge Karen L. Litkovitz |

## PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera, on behalf of themselves and the putative Settlement Class[1] they represent, respectfully move this Court to enter an order:

•      Preliminarily granting class certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(3);

•      Preliminarily approving the proposed settlement as fair, reasonable, and adequate;

•      Directing notice to be disseminated to Settlement Class members in the form and manner proposed by the parties as set forth in the Settlement Agreement;

•      Setting deadlines for class notice to be sent and deadlines for exclusions;

---

[1]    Unless otherwise noted, capitalized terms herein have the definitions set forth in the concurrently filed Settlement Agreement (defined below).

• Appointing Kroll Settlement Administration LLC ("Kroll") to serve as the Settlement Administrator;

• Appointing Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera as class representatives for the settlement;

• Appointing Dorothy P. Antullis of Robbins Geller Rudman & Dowd LLP, Bryan L. Bleichner of Chestnut Cambronne PA, and Hassan A. Zavareei of Tycko & Zavareei LLP as Interim Settlement Class Counsel; and

• Setting a hearing date and schedule for final approval of the settlement and consideration of Settlement Class Counsel's motion for award of fees, costs, expenses, charges, and service awards.

Defendant Luxottica of America, Inc. does not oppose this motion. A copy of the [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement is separately submitted with this motion. This motion is supported by the following memorandum of points and authorities and the accompanying Declaration of Dorothy P. Antullis in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and the Exhibits thereto ("Antullis Declaration" or "Antullis Decl."), including, *inter alia*, the Class Action Settlement Agreement among Plaintiffs and Defendant Luxottica of America, Inc. ("Settlement Agreement," "Agreement," or "SA"), which is attached as Exhibit 1 to the Antullis Declaration, and the Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Declaration" or "Kroll Decl.").

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND .................................................................................................2

      A.      Summary of the Litigation and Procedural History .................................2

      B.      Settlement Negotiations ...........................................................................5

III.    PROPOSED SETTLEMENT ..............................................................................5

      A.      Proposed Class .........................................................................................5

      B.      Settlement Consideration and Plan of Allocation ....................................6

      C.      Business Practice Changes .......................................................................7

      D.      Release .....................................................................................................7

      E.      Class Notice and Settlement Administration ...........................................8

      F.      Service Awards to Plaintiffs ....................................................................9

      G.      Attorneys' Fees and Expenses ...............................................................10

IV.     ARGUMENT .....................................................................................................10

      A.      Legal Standard for Granting Preliminary Approval and Disseminating
            Notice to the Class .................................................................................10

The Court must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and adequate; and (ii) certify the class after the final approval hearing. Fed. R. Civ. P. 23(e)(1)(B). The Court should direct notice to the Class, describing the terms of the proposed settlement and definition of the proposed class, to give Class members an opportunity to object or opt out. Fed. R. Civ. P. 23(c)(2)(B) and (e)(1), (5).

      B.      The Court Will Be Able to Certify the Proposed Class for Settlement
            Purposes upon Final Approval ...............................................................11

To certify the Class, the Court must find that it satisfies Rule 23(a)(1)-(4) and that a class action may be maintained under either Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

          1.      The Class Meets the Rule 23(a)(1)-(4) Requirements ...............................11

**Page**

a.      Rule 23(a)(1): The Class Is Sufficiently Numerous .....................12

The proposed Class includes approximately 829,454 members, well in excess of any numerosity requirement. *Snelling v. ATC Healthcare Servs. Inc.*, 2012 WL 6042839 (S.D. Ohio Dec. 4, 2012).

b.      Rule 23(a)(2): The Class's Claims Present Common
        Questions of Law and Fact ...........................................................12

The Class Members' claims all turn on common questions, including whether Defendant's security environment was adequate to protect their Private Information, satisfying commonality. *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645 (N.D. Ohio 2023); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

c.      Rule 23(a)(3): The Class Representatives' Claims Are
        Typical of Other Class Members' Claims ....................................12

The proposed Class Representatives' claims are typical of those of other Class Members; they arise from the same Data Incident and legal duty. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069  (6th Cir. 1996).

d.      Rule 23(a)(4): Class Representatives and Class Counsel
        Have Protected and Will Protect the Interests of the Class ...........13

Proposed Class Representatives have no conflicts with the Class, have vigorously prosecuted this action, and have selected experienced class action counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976); *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016); *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000).

2.      The Class Meets Rule 23(b)(3) Requirements ...........................................14

a.      Common Issues of Law and Fact Predominate.............................14

Common evidence can prove the claims of all Class Members, which involve common questions regarding whether Defendant used reasonable data security policies to protect their Private Information. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645 (N.D. Ohio 2023); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020).

**Page**

        b.     Class Treatment Is Superior to Other Available Methods
for the Resolution of the Class Members' Claims ........................15

The amount in dispute for each individual Class Member is small, the technical issues are complex, and the required expert testimony and document review are costly, making Class treatment superior. *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402 (E.D. Mich. 2012); *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326(1980); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

        3.     The Class Is Ascertainable .........................................................................16

Defendant's records contain sufficient information to determine class membership and whether a person's Social Security number and/or financial information was impacted by the Data Incident. *Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012).

        4.     The Court Should Appoint Settlement Class Counsel Under Rule
23(g)(3) .......................................................................................................16

Court-appointed Interim Lead Counsel have thoroughly investigated and prosecuted the claims in this action and are highly competent class action attorneys with extensive experience in cybersecurity litigation. The Court should appoint them as Interim Settlement Class Counsel.

C.     The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2) ..............17

To grant preliminary approval, the Court must find that the settlement is fair, adequate, and reasonable. It must consider whether the class representatives and class counsel have adequately represented the class, the proposal was negotiated at arm's-length, the relief provided for the class is adequate, and the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D); *Clark v. Pizza Baker, Inc.*, 2022 WL 16554651 (S.D. Ohio Oct. 31, 2022); *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990); *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645 (N.D. Ohio 2023). The Sixth Circuit has also indicated other factors that may be considered. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007); *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645 (N.D. Ohio 2023).

        1.     Rule 23(e)(2)(A): Interim Lead Counsel and the Class
Representatives Will Continue to Zealously Represent the Class .............18

4880-0704-2771.v1

**Page**

Interim Lead Counsel and the class representatives have adequately represented Class Members and will continue to zealously represent the Class. Fed. R. Civ. P. 23(e)(2)(A). 4 *Newberg and Rubenstein on Class Actions* §13:49 (6th ed. 2022).

2. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations ......................................................19

The settlement is the product of good faith, informed, arm's-length negotiations through a neutral mediator, was negotiated for over seven months following that mediation, and is not the product of collusion. Fed. R. Civ. P. 23(e)(2)(B). *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016).

3. Rule 23(e)(2)(C): Relief Provided to the Class Is Adequate ....................21

To assess the relief, the Court must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the plan for distributing relief to the class and processing claims; (iii) the terms of a proposed award of attorneys' fees; and (iv) any agreements in connection with the settlement. Fed. R. Civ. P. 23(e)(2)(C). *Amos v. PPG Indus.*, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015).

a. The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation ..........21

The settlement mitigates the significant risks, expenses, and delays that Class Members would bear with continued litigation. Defendant's motion to dismiss remains pending, and Class Members have waited years for relief. *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307 (S.D.N.Y. June 25, 2010); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017), *aff'd in part, rev'd in part on other grounds*, 928 F.3d 42 (D.C.C. 2019); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x. 384 (6th Cir. 2016); *Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 F. App'x 540 (6th Cir. 2009).

b. The Proposed Allocation, Including the Method of Processing Class Member Claims, Is Effective ............................23

The court must consider whether the proposed settlement facilitates filing legitimate claims and is not unduly demanding. Here, the

**Page**

settlement's planned allocation and method of processing claims is effective, based on neutral, objective criteria, and offers no preferential treatment. Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

c.      The Terms Relating to Attorneys' Fees Are Reasonable...............23

Counsel anticipates requesting attorneys' fees of only 1.2% of the value of the settlement benefits, reflecting a *negative* lodestar multiplier; this is reasonable. Fed. R. Civ. P. 23(e)(2)(C)(iii). *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016); *Miller v. Baltimore Builders Supply & Millwork, Inc.*, 2023 WL 6554073 (S.D. Ohio Sept. 13, 2023); *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-03499, ECF 34 (S.D. Ohio Mar. 5, 2024).

d.      Agreements to Be Identified ..........................................................25

There are no agreements other than the settlement itself.

4.      Rule 23(e)(4)(D): The Settlement Treats Class Members Equitably.........25

Each Class Member's share of the settlement is calculated in the same way, with the same eligibility requirements, with differences in benefits turning on objective criteria – *i.e.*, the sensitivity of information at issue and the potential value of their alleged claims. *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144 (S.D. Ohio May 30, 2012); *Hawes v. Macy's Inc.*, 2023 WL 8811499 (S.D. Ohio Dec. 20, 2023); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989 (N.D. Ohio June 15, 2010).

D.      Notice Is Adequate.................................................................................................27

The proposed Notices inform Class Members of the nature of the claims, the settlement's essential terms, how to opt out or object to the settlement, and the timing of the final approval hearing. The Notices also contain information about counsel's anticipated request for fees and expenses and include a phone number for more information, as well as the Settlement Website.

V.      CONCLUSION............................................................................................................27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................11, 14, 15

*Amos v. PPG Indus.*,
2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ........................................................21

*Bailey v. Great Lakes Canning, Inc.*,
908 F.2d 38 (6th Cir. 1990) .......................................................................................17

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) .....................................................................................12

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ......................................................................20

*Calloway v. Caraco Pharm. Lab'ys, Ltd.*,
287 F.R.D. 402 (E.D. Mich. 2012) ............................................................................15

*Castillo v. Morales, Inc.*,
2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) ........................................................24

*Clark v. Pizza Baker, Inc.*,
2022 WL 16554651 (S.D. Ohio Oct. 31, 2022) .........................................................17

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) .....................................................................................11

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .....................................................................................15

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ...................................................................................................15

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ..............................................................................22

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ...........................................................................20, 23, 24

*Geier v. Sundquist*,
372 F.3d 784 (6th Cir. 2004) .....................................................................................23

*Gordon v. Dadante*,
2008 WL 1805787 (N.D. Ohio Apr. 18, 2008),
*aff'd*, 336 F. App'x 540 (6th Cir. 2009) ...................................................................22

**Page**

*Hammond v. Bank of N.Y. Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................22

*Hawes v. Macy's Inc.*,
2023 WL 8811499 (S.D. Ohio Dec. 20, 2023) ........................................................26

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ................................................................14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................13

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
266 F. Supp. 3d 1 (D.D.C. 2017),
*aff'd in part, rev'd in part on other grounds*,
928 F.3d 42 (D.C.C. 2019) ................................................................22

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ................................................................18, 19, 26

*Jackson v. Nationwide Ret. Sols., Inc.*,
No. 2:22-cv-03499, ECF 34 (S.D. Ohio Mar. 5, 2024) ........................................25

*Kritzer v. Safelite Sols., LLC*,
2012 WL 1945144 (S.D. Ohio May 30, 2012) ...............................................25, 26, 27

*McKnight v. Erico Int'l Corp.*,
655 F. Supp. 3d 645 (N.D. Ohio 2023)........................................................... *passim*

*Miller v. Balt. Builders Supply & Millwork, Inc.*,
2023 WL 6554073 (S.D. Ohio Sept. 13, 2023) ......................................................24

*Moeller v. Week Publ'ns, Inc.*,
649 F. Supp. 3d 530 (E.D. Mich. 2023)................................................................18

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ................................................................11, 13

*Perry v. AutoZone Stores, Inc.*,
624 F. App'x 370 (6th Cir. 2015) ................................................................24

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
2010 WL 2490989 (N.D. Ohio June 15, 2010)................................................12, 27

4880-0704-2771.v1

**Page**

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
 863 F.3d 460 (6th Cir. 2017) .................................................................................16

*Senter v. Gen. Motors Corp.*,
 532 F.2d 511 (6th Cir. 1976) .................................................................................13

*Snelling v. ATC Healthcare Servs. Inc.*,
 2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) .........................................................12

*Stout v. J.D. Byrider*,
 228 F.3d 709 (6th Cir. 2000) .................................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016).............................................................................................14

*Waggoner v. U.S. Bancorp*,
 2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) .....................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).............................................................................................12

*Young v. Nationwide Mut. Ins. Co.*,
 693 F.3d 532 (6th Cir. 2012) .............................................................11, 14, 15, 16

4880-0704-2771.v1

**Page**

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(a)............................................................................................................11
    Rule 23(a)(1)........................................................................................................12
    Rule 23(a)(1)-(4)..................................................................................................11
    Rule 23(a)(2)........................................................................................................12
    Rule 23(a)(3)........................................................................................................12
    Rule 23(a)(4)........................................................................................................13
    Rule 23(b)(1)........................................................................................................11
    Rule 23(b)(2)........................................................................................................11
    Rule 23(b)(3)......................................................................................11, 14, 15, 16
    Rule 23(b)(3)(A)-(D) ...........................................................................................15
    Rule 23(c)(2)(B)...............................................................................................11, 27
    Rule 23(e)..........................................................................................................18, 23
    Rule 23(e)(1)........................................................................................................11
    Rule 23(e)(1)(B)...............................................................................................10, 27
    Rule 23(e)(2) ...................................................................................................*passim*
    Rule 23(e)(2)(A)...............................................................................................18, 19
    Rule 23(e)(2)(B)...............................................................................................19, 27
    Rule 23(e)(2)(C)...................................................................................................21
    Rule 23(e)(2)(C)(iii)............................................................................................23
    Rule 23(e)(3)........................................................................................................25
    Rule 23(e)(4)(D)..................................................................................................25
    Rule 23(e)(5)........................................................................................................11
    Rule 23(g)(1)(A)..................................................................................................16
    Rule 23(g)(1)(B)..................................................................................................16
    Rule 23(g)(2)........................................................................................................16
    Rule 23(g)(3)........................................................................................................16
    Rule 23(g)(4)........................................................................................................17

## SECONDARY AUTHORITIES

William B. Rubenstein, Herbert B. Newberg, et al.,
    4 *Newberg and Rubenstein on Class Actions* (6th ed. 2022)
    §13:49 ..................................................................................................................18
    §13:50 ..................................................................................................................19
    §13:56 ..................................................................................................................25

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera (collectively, "Class Representatives" or "Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement between the Plaintiffs and Defendant Luxottica of America, Inc. ("Luxottica" or "Defendant") and entry of the [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").

## I.    INTRODUCTION

The proposed settlement before the Court resolves claims related to an August 2020 data breach that compromised the confidential personal and health information of Plaintiffs and more than 800,000 similarly situated individuals (the "Data Incident").  An unauthorized party accessed Plaintiffs' and Settlement Class members' personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"), including some or all of the following: full names, Social Security numbers, financial information, contact information, appointment dates and times, health insurance policy numbers, and doctor or appointment notes that may indicate information related to eye care treatment, such as prescriptions, health conditions, or procedures.

Plaintiffs seek to represent a class of patients and consumers who had their Private Information compromised in the Data Incident.  As part of the settlement, Defendant has agreed to compensate Plaintiffs and Settlement Class members for their injuries, including lost time and out-of-pocket expenses, and make certain cash payments as described herein.

- 1 -

## II.     BACKGROUND

### A.     Summary of the Litigation and Procedural History

This lawsuit ("Action" or "Litigation") arises from the Data Incident where an unauthorized party accessed a subset of appointment records in The Appointment Book ("TAB"), Defendant's scheduling application software, between August 5-9, 2020.  ECF 31, ¶47; Antullis Decl., ¶4.  On August 28, 2020, Luxottica preliminarily concluded that the attacker might have accessed and acquired patient information.  ECF 31, ¶47.  In total, the attacker was able to access over 800,000 appointment records from Luxottica-owned practices and its 1,355 independent practices.  ECF 31, ¶50.

Defendant began notifying affected patients on October 28, 2020.  ECF 31, ¶¶48, 50.  According to Kroll, Luxottica's consultant, patients whose Social Security numbers or financial information were compromised were explicitly informed of same in their notification letters by Luxottica.[2]  *Id.*  While Luxottica claimed it was "not aware of any misuse of personal information or harm to patients as a result of this incident[,]" it could not rule out the possibility and advised victims of the Data Incident, including Plaintiffs, to "remain vigilant, including by regularly reviewing your account statements."  *Id.*; ECF 31, ¶51.  Luxottica advised patients who had their Private Information compromised to "take steps to protect themselves, for example by closely monitoring notices from your health insurer and health care providers for unexpected activity." *Id.*

Plaintiff Doyle filed *Doyle v. Luxottica of Am., Inc.*, 1:20-cv-908 (S.D. Ohio) on November 10, 2020.  ECF 1.  Several related complaints were filed shortly thereafter.  Antullis Decl., ¶5.  On

---

[2]     *Important Information Regarding Security Incident*, Kroll, https://luxottica.kroll.com (last visited Feb. 28, 2024).

December 21, 2020, the Court granted Plaintiffs' Unopposed Motion to Consolidate, with an amended Order issued on December 28, 2020. ECFs 17, 21; Antullis Decl., ¶5. The Court also entered an Order appointing Hassan A. Zavareei of Tycko & Zavareei LLP, Bryan L. Bleichner of Chestnut Cambronne PA, and Dorothy P. Antullis of Robbins Geller Rudman & Dowd LLP as Interim Lead Counsel for all Plaintiffs ("Interim Lead Counsel"). ECF 26; Antullis Decl., ¶6. Plaintiffs filed their Consolidated Class Action Complaint ("CAC") on January 27, 2021. ECF 31; Antullis Decl., ¶7.

In the CAC, Plaintiffs allege, individually and on behalf of the Settlement Class members, that as a direct result of the Data Incident they suffered numerous actual and concrete injuries and were at a significantly increased risk of identity and medical fraud. ECF 31, ¶123; Antullis Decl., ¶8. Plaintiffs' claims for damages and remedies included the following categories of harm: (a) identity theft and fraud resulting from theft of their PII and PHI; (b) costs associated with the detection and prevention of identity theft and unauthorized use of their online accounts, including financial accounts; (c) loss of the inherent value of their PII and PHI; (d) costs associated with purchasing credit monitoring and identity theft protection services; (e) unauthorized access to and misuse of their online accounts; (f) unauthorized access to and misuse of their PHI; (g) unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit; (h) lowered credit scores resulting from credit inquiries following fraudulent activities; (i) costs associated with time spent and the loss of productivity or enjoyment of one's life attempting to mitigate and address the actual and future consequences of the Data Incident, including discovering fraudulent charges, cancelling and

4880-0704-2771.v1

reissuing cards, and addressing other varied instances of identity theft; (j) the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII and PHI being in the possession of one or more unauthorized third parties; and (k) the continued risk of exposure to hackers and thieves of their PII and PHI. *Id.*

Plaintiffs asserted claims for Negligence (Count I), Negligence Per Se (Count II), Declaratory Judgment (Count III), Breach of Confidence (Count IV), Unjust Enrichment (Count V), Breach of Fiduciary Duty (Count VI), Willful Violation of the Fair Credit Reporting Act (Count VII), Negligent Violation of the Fair Credit Reporting Act (Count VIII), Violation of California's Unfair Competition Law (Count IX), Violation of California's Customer Records Act (Count X), Violation of California's Consumer Privacy Act (Count XI), Violation of California's Confidentiality of Medical Information Act (Count XII), Violation of Connecticut's Unfair Trade Practices Act (Count XIII), Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIV), and Violation of Missouri's Merchandising Practices Act (Count XV). ECF 31; Antullis Decl., ¶9.

On March 19, 2021, Defendant filed its Motion to Dismiss Consolidated Amended Class Action Complaint challenging Plaintiffs' Article III standing and contesting all 15 causes of action. ECF 34; Antullis Decl., ¶10. Thereafter, the parties engaged in a full round of briefing, including the filing of a response, reply, and notices of supplemental authority. ECFs 41, 43-44, 48; Antullis Decl., ¶10. On August 19, 2021, the Court held oral argument on Defendant's motion to dismiss, which remains pending. Antullis Decl., ¶10. In the interim, the parties propounded, answered, and produced documents in response to substantial discovery requests, including Plaintiffs' ten interrogatories and 89 requests for production, Defendant's 22 interrogatories and 25 requests for production, third-party discovery directed at Luxottica's retailers, and deposition notices. *Id.*, ¶11.

The parties met and conferred extensively for two years, via Zoom and lengthy email correspondence, attended at least nine status conferences before the Court, where they discussed outstanding discovery disputes, and submitted a detailed joint discovery dispute letter to the Court once impasse was reached. *Id.*, ¶12.

Plaintiffs reviewed thousands of documents produced by Defendant, conducted the deposition of the eye care practitioner whose Luxottica TAB account was the subject of the Data Incident, and prepared to take a corporate representative deposition of Luxottica under Rule 30(b)(6), prior to negotiating the instant settlement. *Id.*, ¶13.

### B. Settlement Negotiations

The parties initially engaged in preliminary settlement negotiations at the inception of litigation with little success. Antullis Decl., ¶14. After almost three years of litigation, the parties agreed to mediate before Bennett Picker of Stradley Ronon Stevens & Young, LLP – a mediator with substantial experience handling data breach class action mediations. *Id.*, ¶15. The parties participated in an all-day remote mediation on September 28, 2023, with Mr. Picker. *Id.*, ¶16. During the mediation session, the parties agreed to terms forming the substance of the settlement. *Id.* Negotiations of attorneys' fees, costs, and expenses did not begin until agreement on behalf of the Settlement Class members had been reached. *Id.* Informal mediation regarding attorneys' fees was held on November 8, 2023. *Id.* This settlement is the result of those extensive arm's-length negotiations.

## III. PROPOSED SETTLEMENT

### A. Proposed Class

The settlement is conditioned upon the approval, for settlement purposes only, of the following class (the "Settlement Class"):

4880-0704-2771.v1

All residents of the United States of America whose PII or PHI was compromised in the Data Incident.

**B.      Settlement Consideration and Plan of Allocation**

Defendant has agreed to fund a non-reversionary common fund ("Common Fund") in the amount of $250,000.  SA, ¶¶1.2, 8.6.  The Common Fund will be used to compensate, with Category One Benefits, those approximately 1,684 Settlement Class members whose Social Security numbers and/or financial information was compromised as a result of the Data Incident.  *Id.*, ¶1.4.  Under the terms of the Agreement, those Settlement Class members eligible under Category One may submit a claim for a cash payment, *pro rata* ("Category One Cash Payment").  *Id.*, ¶2.2.  To the extent the total amount of the approved claims from the Common Fund at the end of the claims period exceeds or is less than the total amount remaining in the Common Fund, the Category One Cash Payment amount will be increased or decreased on a *pro rata* basis.  *Id*.  Lastly, Settlement Class members eligible under Category One shall receive three-bureau credit monitoring for two years.  *Id.*, ¶2.5.

Category Two Benefits will be made available to the approximately 827,770 Settlement Class members whose PII and/or PHI were compromised as a result of the Data Incident, outside of Social Security numbers and/or financial information.  *Id.*, ¶1.5.  Settlement Class members eligible under either Category One or Category Two shall have the right to make a claim for reimbursement for time spent up to four hours at $20 per hour, upon attestation.  *Id.*, ¶2.3.  All Settlement Class members may also claim reimbursement of monetary losses fairly traceable to the Data Incident, by submitting supporting documentation.  *Id.*, ¶2.4.

Settlement Class members who are eligible for either Category One or Category Two and who attest in writing that, at the time of the Data Incident, they were a California resident and further provide a valid California residential address may be eligible for a cash payment of $50.

- 6 -

*Id.*, ¶2.2.  Kroll, the proposed Settlement Administrator, will make California settlement payments to claimants who are eligible under Category One from the Common Fund, and will make California settlement payments to claimants who are eligible under Category Two outside of the Common Fund, but subject to a $300 total Claims-Made cap.  *Id.*

### C.     Business Practice Changes

As part of the settlement, Defendant has implemented certain reasonable steps to adequately secure its systems and environments and will maintain those conditions for at least two years from the Effective Date.  *Id.*, ¶2.10.

### D.     Release

In exchange for the settlement relief detailed above, each Settlement Class member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.  *Id.*, ¶6.1. Additionally, Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims are asserted.  *Id.*

Per the Settlement Agreement, Luxottica shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Class Representative Plaintiffs, each and all of the Class Members, Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation, except for enforcement of the Settlement Agreement. *Id.*, ¶6.2.  Any other claims or defenses Luxottica may have against such Persons including, without limitation, any claims based upon or arising out of any contractual, employment, or other

- 7 -

business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.  *Id.*

      **E.**    **Class Notice and Settlement Administration**

Kroll has been engaged to provide notice and settlement administration services in this settlement, contingent upon the Court's approval.  Antullis Decl., ¶25.  Kroll participated in the administration of notice to impacted patients and consumers regarding the original Data Incident and is thus best-situated to provide efficient and timely notice of the settlement.  *Id.*  In this matter if the Court approves, then Kroll will provide a full complement of notification and claims administration services to the most comprehensive set of Settlement Class members possible and will implement payment of claims.

Kroll will establish a Settlement Website that will inform Settlement Class members of the terms of the Agreement, their rights, dates, and deadlines and related information.  Kroll Decl., ¶18; SA, ¶8.1.  The Settlement Website will include, in .pdf format and available for download, the following: (i) the Short Form Notice; (ii) the Long Form Notice; (iii) the Claim Forms; (iv) the Preliminary Approval Order; (v) the Agreement; and (vi) any other materials agreed upon by the parties and/or required by the Court.  SA, ¶8.1  The Settlement Website will provide Settlement Class members with the ability to complete and submit the Claim Form electronically, and will be maintained and updated through the Claims Deadline.  *Id.*

Notice will include direct notice in the form of an email correspondence and one reminder email notice, where needed, to the Settlement Class members via emails in Luxottica's possession. *Id.*  If Luxottica does not possess the email for any Settlement Class member, Kroll shall provide notice to the Settlement Class member's last-known address via United States First-Class Mail (collectively, "Notice Program").  Kroll Decl., ¶¶13-17; SA, ¶8.1.

Kroll will also set up a toll-free help line with an interactive voice system ("IVR") and a live call-back option shall be made available to provide Settlement Class members with additional information about the settlement.  Kroll Decl., ¶19; SA, ¶8.1.  Settlement Class members will be able to submit a Claim Form via the Settlement Website or United States Mail.  Kroll Decl., ¶¶18-20; SA, ¶8.1.

Defendant has agreed to pay all costs and expenses of notice and settlement administration, to be paid outside of and in addition to the Common Fund and other funds and benefits made available for Category One and Two benefits, attorneys' fees and costs, and service awards.  SA, ¶¶7.5, 8.11.

### F.     Service Awards to Plaintiffs

Plaintiffs and Class Representatives Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera have vigorously pursued these claims since 2020.  Antullis Decl., ¶28.  Each has been integral to the successful prosecution of this Action.  As will be further described in sworn declarations that will be filed in conjunction with counsel's request for an award of attorneys' fees, expenses and charges, and service awards, each participated significantly by researching and filing their complaints, responding to interrogatories and discovery requests for production from their personal files, and regularly communicating with their retained counsel regarding the status and strategy of the case.  *Id.*, ¶¶29-31.  In light of these efforts, Interim Lead Counsel will seek an order from the Court awarding $2,500.00 service awards to each Settlement Class Representative, for a total of $15,000.00 in service awards, in recognition of the time, effort, and expense Plaintiffs incurred pursuing claims that benefited the Settlement Class.  *Id.*, ¶34; SA, ¶7.3.

Should the Court grant service awards to Plaintiffs, Defendant has agreed to pay those awards separately from any other benefit provided for under the terms of the Agreement, such that

- 9 -

the awards shall not reduce the Common Fund or the Claims-Made benefits made available to the Settlement Class.  SA, ¶7.5.

### G.    Attorneys' Fees and Expenses

Plaintiffs will also seek an award of attorneys' fees and litigation costs, expenses, and charges in an amount not to exceed $850,000.  *Id.*, ¶7.2.  The motion for fees, costs, and expenses will encompass all efforts and expenditures incurred by counsel in this Action and will be supported with detailed lodestar information and an accounting of expenses and charges.  Antullis Decl., ¶47.  Should the Court award attorneys' fees, costs, expenses, and charges, Defendant has agreed to pay the amount awarded by the Court separately from any other benefit provided for under the terms of the Agreement, such that the award shall not reduce the Common Fund, the Claims-Made, the settlement administration costs, or any other relief made available to the Settlement Class.  SA, ¶7.5.  Moreover, fees and expenses were negotiated only after settlement terms were negotiated and agreed to for Settlement Class members, and the Agreement is not conditioned upon the Court's approval of service awards, attorneys' fees, costs, expenses, or charges.  *Id.*

## IV.    ARGUMENT

### A.    Legal Standard on Granting Preliminary Approval and Disseminating Notice to the Class

Federal Rule of Civil Procedure ("Rule") 23(e) governs a district court's analysis of the appropriateness of a proposed class action settlement and creates a three-stage process for approval.  First, for preliminary approval, a court must determine that it is likely to be able to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2); and (ii) certify the class after the final approval hearing.  *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment

(standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed class, describing the terms of the proposed settlement and the definition of the proposed class, to give class members an opportunity to object or to opt out. *See* Fed. R. Civ. P. 23(c)(2)(B) and (e)(1), (5). Third, after a hearing and giving Settlement Class members an opportunity to object or opt out, the Court may grant final approval of the proposed settlement by certifying the class and finding that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

### B. The Court Will Be Able to Certify the Proposed Class for Settlement Purposes upon Final Approval

Certification of a class is a two-step process. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).[3] First, the Court must find that the proposed class satisfies the requirements of Rule 23(a). *Id.* (citing Fed. R. Civ. P. 23(a)). Second, the Court must find that a class action may be maintained under either Rule 23(b)(1), (2), or (3). *Id.* The proposed Settlement Class here readily satisfies the Rule 23(a)(1)-(4) and (b)(3) certification requirements, and thus the Court will easily be able to certify the Settlement Class. *See Pelzer v. Vassalle*, 655 F. App'x 352, 369 (6th Cir. 2016) (affirming district court's approval of settlement and nationwide class certification).

### 1. The Class Meets the Rule 23(a)(1)-(4) Requirements

Rule 23(a) requires numerosity, commonality, typicality, and adequacy. *See Amchem*, 521 U.S. at 613. Additionally, the Sixth Circuit has adopted an implicit ascertainability requirement. *See Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (citing, among other authorities, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)).

---

[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

- 11 -

### a. Rule 23(a)(1): The Class Is Sufficiently Numerous

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class contains roughly 829,454 Settlement Class members. These numbers easily satisfy the numerosity requirement. *See Snelling v. ATC Healthcare Servs. Inc.*, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (noting that a class of 40 or more is generally sufficiently numerous); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010) (1,800 member class easily satisfied numerosity).

### b. Rule 23(a)(2): The Class's Claims Presents Common Questions of Law and Fact

Commonality requires the class to share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "'in one stroke.'" *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 656-57 (N.D. Ohio 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, Plaintiffs' and Settlement Class members' claims turn on whether Defendant's security environment was adequate to protect Plaintiffs' and Settlement Class members' Private Information. The resolution of that single inquiry turns on evidence that does not vary from Settlement Class member to Settlement Class member, and so it is a question that can be fairly resolved – whether through litigation or settlement – for all Settlement Class members at once.

### c. Rule 23(a)(3): Class Representatives' Claims Are Typical of Other Class Members' Claims

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical if "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v.*

*CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of the putative class because they arise from the same Data Incident and from the same legal duty Defendant had to secure the PII and PHI of Plaintiffs and Settlement Class members, creating a clear nexus between Plaintiffs' claims and those of the Settlement Class members.

### d. Rule 23(a)(4): Class Representatives and Class Counsel Have Protected and Will Protect the Interests of the Class

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit articulates two criteria for determining adequacy: "'(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel.'" *McKnight*, 655 F. Supp. 3d at 657 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976)). Put another way, the adequacy of class representation "'[is] determine[d] [by] whether class counsel are qualified, experienced and generally able to conduct the litigation, and [by] whether the class members have interests that are not antagonistic to one another.'" *Pelzer*, 655 F. App'x at 364 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)).

Here, Plaintiffs have no conflicts with absent Settlement Class members and are equally invested in challenging Defendant's allegedly inadequate data security. Antullis Decl., ¶33. Plaintiffs understand their duties and have agreed to consider only the interests of absent Settlement Class members. *Id.* They have also participated actively in the case, including by engaging in discovery, producing sensitive documents, and communicating with their counsel regarding the strategy and status of the litigation. *Id.*, ¶¶29-30.

- 13 -

Moreover, they selected and are represented by experienced class action attorneys who specialize in privacy litigation, who were appointed on an interim basis by the Court to represent putative Settlement Class members' interests. *See id.*, ¶¶35-40. Interim Lead Counsel also have no conflicts with Plaintiffs or Settlement Class members, and have prosecuted this Action vigorously, and successfully, on behalf of the Settlement Class members, and will continue to do so. *Id.*, ¶37.

### 2. The Class Meets Rule 23(b)(3) Requirements

#### a. Common Issues of Law and Fact Predominate

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Young*, 693 F.3d at 544. Here, the Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend, first and foremost, on common questions regarding whether Defendant used reasonable data security policies to protect their Private Information. That question can be resolved using the same evidence for all Settlement Class members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'"). And while the extent of Settlement Class members' damages may vary, that dissimilarity does not defeat a finding of predominance for the Settlement Class. *See McKnight*, 655 F. Supp. 3d at 658) (citing *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020)).

- 14 -

Importantly, predominance analysis in the settlement context need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether Defendant failed to properly secure the Private Information taken from it in the Data Incident, such that Plaintiffs and Settlement Class members should now be provided a remedy.

### b. Class Treatment Is Superior to Other Available Methods for the Resolution of the Class Members' Claims

Superiority requires courts to consider whether a class action "is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys, Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Young*, 693 F. 3d at 545 (quoting *Amchem*, 521 U.S. at 617). Without a class action, then, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Resolution of the issues here through individual actions is impracticable: the amount in dispute for individual Settlement Class members is too small given that the average amount each member will recover will be approximately the same as the Court's filing fee, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See McKnight*, 655 F. Supp. 3d at 658 (class action was superior method of adjudicating claims given the amount each class member would recover and the district court's filing fee of $402). Additionally, the factors listed in Rule 23(b)(3) support a finding of superiority. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). First, there

- 15 -

is no evidence that members of the Settlement Class desire to bring litigation separately.  Second, there is no related pending litigation.  Finally, concentrating litigation in one forum will foster efficiency and minimize expenses.  *See McKnight*, 655 F. Supp. 3d at 659.

### 3.    The Class Is Ascertainable

Rule 23(b)(3) classes must also meet an implied ascertainability requirement, *see Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017), and must include a class definition that is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member [of the proposed class]."  *Young*, 693 F.3d at 537-38; *McKnight*, 655 F. Supp. 3d at 657.  Here, Settlement Class members can be identified based on Defendant's records, which contain information sufficient to determine whether the Settlement Class member's appointment records were impacted and whether Social Security numbers, financial information, or other information was involved.  *See id.* (finding ascertainability met where defendant's software was able to identify settlement subclasses); SA, ¶8.1.

### 4.    The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(3)

A court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)."  Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1)(A), the Court must consider

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Also, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

4880-0704-2771.v1

Finally, Rule 23(g)(4) requires class counsel to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The Court previously appointed Interim Lead Counsel under Rule 23(g) (ECF 26), and should reaffirm by appointing them Settlement Class Counsel. They have thoroughly identified and investigated the potential claims, engaged in party and third-party discovery, and are highly competent class action attorneys with "extensive experience in cybersecurity litigation." *See* Antullis Decl., ¶¶38-41, Exhibits 5-7. Moreover, Interim Lead Counsel prepared and argued difficult briefing throughout this Litigation and have demonstrated their intimate knowledge of the law in this area. *See, e.g.*, ECFs 41, 43-44, 48. Finally, Interim Lead Counsel have committed significant resources to represent the class. As of the date of settlement, the firms had collectively spent hundreds of hours pursing this case and in forging this settlement, for a collective lodestar of approximately $3 million. Antullis Decl., ¶43.

Accordingly, the Court should reappoint Interim Lead Counsel, Dorothy P. Antullis, Brian L. Bleichner, and Hassan A. Zavareei as Settlement Class Counsel.

### C. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)

Before preliminarily approving a settlement agreement and ordering notice be provided to the class, a court must determine it will likely be able to find that the settlement is "'fair, adequate, and reasonable, as well as consistent with the public interest.'" *Clark v. Pizza Baker, Inc.*, 2022 WL 16554651, at *3 (S.D. Ohio Oct. 31, 2022) (quoting *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). Under Rule 23(e)(2), a court may approve a proposed class settlement

> only . . . after considering whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); *McKnight*, 655 F. Supp. 3d at 661.

The Sixth Circuit has identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate, including:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). Although the advisory committee notes to the 2018 amendment state that the amendment to Rule 23(e)(2) "did not replace any [pre-existing] factors," *Moeller v. Week Publ'ns, Inc.*, 649 F. Supp. 3d 530, 541 n.1 (E.D. Mich. 2023), the amendment sought "'to focus the court and lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *McKnight*, 655 F. Supp. 3d at 661 (quoting Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment). Accordingly, Ohio district courts have determined that the proper standard for approval of a class settlement under Rule 23(e)(2) begins with and requires the considerations listed in the Rule. *Id.* ("[T]he factors identified [by the 6th Circuit] in *UAW* might have relevance on any particular set of facts. Where they do not, there is no occasion to consider them."). While all of the *UAW* factors may not be relevant to the facts at issue here, Plaintiffs note that the settlement does nonetheless satisfy (1)-(5) and (7) now, as well as the Rule 23(e)(2) factors.

### 1. Rule 23(e)(2)(A): Interim Lead Counsel and the Class Representatives Will Continue to Zealously Represent the Class

Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." William B. Rubenstein, Herbert B. Newberg, et al., 4 *Newberg and Rubenstein on Class Actions*

§13:49 (6th ed. 2022) ("*Newberg*"). Interim Lead Counsel and Settlement Class Representatives fought hard to protect the interests of the Settlement Class members, as evidenced by the significant compensation available to the Settlement Class through the proposed settlement. Interim Lead Counsel prosecuted this Action and its fair resolution with vigor and dedication since filing their clients' complaints. *See* Fed. R. Civ. P. 23(e)(2)(A). Interim Lead Counsel undertook significant efforts to uncover the facts to continuously prosecute and refine the Settlement Class' claims. Interim Lead Counsel also engaged in robust Rule 12 motion practice – researching, drafting, and filing thorough opposition briefs to Defendant's motion to dismiss. Likewise, Settlement Class Representatives played an integral role to the litigation by consulting with counsel, and providing them with important information, including documents crucial to the litigation. Antullis Decl., ¶30. Moreover, Interim Lead Counsel and the Settlement Class Representatives believe that the settlement is fair, reasonable, and adequate for the many reasons explained herein.

### 2. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations

Rule 23(e)(2)(B) requires that the parties must negotiate the settlement at arm's-length. *See* Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out . . . 'collusive settlements.'" *Newberg* §13:50; *UAW*, 497 F.3d at 631. Here, resolution was clearly produced by way of good faith, informed, and arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action. At each stage of the litigation, the parties engaged in an adversarial bargaining process. First, before settling, the parties exchanged substantial discovery and briefing. *See, e.g.*, ECFs 41, 43-44, 48. Second, the parties reached the settlement through a neutral mediator and then spent the following seven months discussing and disputing the final terms of the Settlement Agreement. Antullis Decl., ¶17;

*see Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

Indeed, the proposed settlement terms do not point to collusive negotiations. Attorneys' fees and service awards were negotiated only following the settlement of all other material terms for the Settlement Class – with the Court being the final decision maker; no portion of the Common Fund for Category One Benefits will revert to Defendant, and there is no cap on the total amount that can be claimed for Category Two Benefits. SA, ¶8.7. Moreover, it took the parties two separate attempts at settlement negotiations, separated by almost three years of active litigation, two separate mediations with Mr. Picker, and months of after-mediation negotiating to reach and execute an acceptable settlement. *See* Antullis Decl., ¶¶14-17. If anything the first efforts at negotiating settlement reinforced the parties' resolve to litigate the issues in dispute, and we actively litigated for another two years. *Id.* The 2023 mediations ultimately proved successful, but only after hard-fought negotiations, starting weeks prior to the day of mediation and continuing for over seven months to reduce the settlement to writing. *See id.*, ¶¶16-17.

Settlements resulting from formal mediations conducted by an experienced mediator weigh in favor of granting preliminary settlement approval. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (finding a "formal mediation session" weighed against the possibility of fraud or collusion); *see also Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of, *inter alia*, "an involved mediation before an experienced mediator"). In sum, the settlement is fair and not the subject of fraud or collusion and the Court will be able to approve it.

### 3.  Rule 23(e)(2)(C): The Relief Provided to the Class Members Is Adequate

In assessing whether the relief is adequate, the Court must take into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

While Plaintiffs believe in the merits of their case, the Court has yet to rule on Defendant's motion to dismiss.  Plaintiffs allege, and would have to prove, that Defendant was aware of deficiencies in its security policies, and lacked industry standard tools necessary to protect patients' Private Information, but did nothing to improve its security practices.  ECF 31, ¶¶55, 62-78.  Plaintiffs would also have to prove causation and damages on a class-wide basis, which would be subject to multiple vigorous defenses from Defendant, including *Daubert* challenges.  *See Amos v. PPG Indus.*, 2015 WL 4881459, at *3 (S.D. Ohio Aug. 13, 2015) ("'In general, "[m]ost class actions are inherently complex[,] and settlement avoids the costs, delays, and multitude of other problems associated with them."'").

### a.  The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation

The parties conducted extensive briefing and discovery prior to settlement negotiations, and Plaintiffs completed significant investigations during the pendency of this Action.  *See* Antullis Decl., ¶¶10-11.  And while Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk.  Almost all class actions involve a high level of risk, expense, and complexity, which is one reason judicial policy so strongly favors resolving class actions through settlement.  *See Amos*, 2015 WL 4881459, at *1.  Historically, data breach cases

have faced substantial hurdles in surviving even past the pleading stage. *See, e.g.*, *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010). Even cases implicating data far more sensitive than at issue here have been found wanting. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *aff'd in part, rev'd in part on other grounds*, 928 F.3d 42 (D.C.C. 2019); *but see Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (allegations adequate to demonstrate injury-in-fact for Article III standing in data breach case). In any event, settlement is clearly the more prudent course when a reasonable deal is available.

The settlement benefits here are impressive given the inherent uncertainties of continued litigation and the inevitable delay that would accompany it. Settlement, by its very nature, does not require full recovery of actual damages, and a compromise of potential recovery in exchange for certain and timely provision of the benefits under the settlement is an unquestionably reasonable outcome. *See Gordon v. Dadante*, 2008 WL 1805787, at *13 (N.D. Ohio Apr. 18, 2008) ("[D]ue to the risks of litigation and the costs of litigation in time and money, a reasoned settlement need not necessarily rise to the level of 100% of the actual damages figure."), *aff'd*, 336 F. App'x 540 (6th Cir. 2009). And even if Plaintiffs achieved a successful judgment, injunctive practice changes to Defendant's security policies would likely be years away following appeals, and credit monitoring would potentially not be provided. Delay only further injures Plaintiffs and Settlement Class members and increases their risk of harm, thus making settlement the more prudent and expeditious route. Lastly, the settlement serves the public interest in resolving a nationwide class action to benefit Plaintiffs and Settlement Class members, and to conserve the Court's resources by properly avoiding trial and appeals.

4880-0704-2771.v1

**b.      The Proposed Allocation, Including the Method of Processing Class Member Claims, Is Effective**

This consideration requires the Court to ensure that claims processing (1) facilitates filing legitimate claims, and (2) is not unduly demanding.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  The proposed plan of allocation here is based on neutral, objective criteria; is the product of extensive, informed negotiations; and will ensure a fair distribution of the Common Fund and Claims-Made benefits among Settlement Class members.  Settlement Class members will receive notice through the Notice Program, and will be able to file claims directly on the Settlement Website.  SA, ¶8.1.  Kroll will calculate and administer claims, and determine validity against Defendant's Settlement Class member information.  *Id.*, ¶¶8.1-8.2.  Therefore, these procedures will capture legitimate claims and effectively distribute settlement checks.

Moreover, no segment of the Settlement Class, including Settlement Class Representatives, will receive preferential treatment under this settlement.  All Settlement Class members are entitled to the same relief, including lost time and out-of-pocket expenses upon attestation or documentation.  *Id.*, ¶¶2.3-2.4.  And all Category One Settlement Class members who submit an approved claim by the claims deadline are entitled to a *pro rata* portion of the Common Fund.  *Id.*, ¶2.2.  California Settlement Class members will also receive a $50 cash payment by virtue of the civil penalties made available to California consumers under state statute.  *Id.*

**c.      The Terms Relating to Attorneys' Fees Are Reasonable**

This consideration directs a court to examine the attorneys' fees requested and the timing of their payment.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  In determining reasonable attorneys' fees "in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Gascho*, 822 F.3d at 279; *see also Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (attorneys' fees should be "'adequately compensatory

- 23 -

to attract competent counsel'"). Here, Interim Lead Counsel's anticipated request of no more than $850,000 is reasonable under either the lodestar method or the percentage-of-the-fund method. *Id.*, 279-80; *see also Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015).

Plaintiffs' Counsel, including the three Co-Leads from the law firms Tycko & Zavareei LLP; Chestnut Cambronne PA; and Robbins Geller Rudman & Dowd LLP, have worked efficiently and diligently to forge a strong recovery for the Settlement Class. *See* Antullis Decl., ¶¶35-41. As of the date of the settlement-in-principle, the appointed firms have collectively spent hundreds of hours pursuing this case and in forging this settlement for a collective lodestar of approximately $3 million. *Id.*, ¶43.[4] Plaintiffs' Counsel have spent and will continue to expend additional hours and resources to pursue this matter through preliminary and final approval, including overseeing the distribution of Settlement benefits to Settlement Class members and answering any further questions from Settlement Class members about the settlement and its benefits. *Id.*, ¶44. An $850,000 request, therefore, represents 28.3% of counsel's combined lodestar thus far – *i.e.*, a significant negative multiplier. *Id.*, ¶45; *see also Miller v. Balt. Builders Supply & Millwork, Inc.*, 2023 WL 6554073, at *2 (S.D. Ohio Sept. 13, 2023) (noting that "a negative multiplier supports [the reasonableness of the fees]").

Moreover, under the percentage-of-the-benefit method, class counsel may be awarded a percentage of the settlement benefits they secured for the benefit of class members. *Gascho*, 822 F.3d at 288 (fee award based on benefits made available to the class "is an acceptable way to

---

[4]   The "starting point" for determining a reasonable attorney fee is the lodestar amount, "which is calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the relevant community for such work." *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015).

- 24 -

quantify the court's recognition that having the ability to make a claim has value"). Here, the monetary value of such settlement benefits secured for and made available to the Settlement Class could exceed approximately $66 million. Antullis Decl., ¶46. Interim Lead Counsel's $850,000 request represents just 1.2% of this total settlement (*id.*), which further establishes the reasonableness of the anticipated fee request. *See, e.g.*, *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-03499, ECF 34 (S.D. Ohio Mar. 5, 2024) (Watson, J.) (approving class counsel's fee and expense request consisting of approximately 16% of the benefit made available to class members in a similar data breach class action where the primary settlement benefit was two years of three-bureau credit monitoring). Thus, under both methods, Plaintiffs' Counsel's request is reasonable.

### d. Agreements to Be Identified

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the only such agreement is the settlement itself. Accordingly, there is no risk that "related undertakings . . . may have influenced the terms of the settlement," and this sub-factor supports the adequacy of relief. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

### 4. Rule 23(e)(4)(D): the Settlement Treats Class Members Equitably in Relation to One Another

This factor "ensure[s] that similarly situated class Members are treated similarly." *Newberg* §13:56. In evaluating the fairness of a class settlement, Ohio courts also ensure that the distribution of settlement proceeds is equitable. *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012). In *Kritzer*, the court approved a settlement structure allocating funds based on the proportion of hours worked by employees, despite that fact that individual claims varied. *Id.* at *2. In approving settlement, the court held that "[e]quity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair,

reasonable, and adequate." *Id.* at *8 (citing *UAW*, 497 F.3d at 628); *see Hawes v. Macy's Inc.*, 2023 WL 8811499, at *3, *12 (S.D. Ohio Dec. 20, 2023) (court found that a settlement structure categorizing payment of claims based on differing proof of purchase was equitable because "while the distribution scheme may not treat [Class] members strictly equally, it does treat them equitably. . . . [b]ecause 'it is reasonable to allocate [funds] based on . . . the strength of their claims on the merits.'").

Here, similar to *Kritzer*, each qualified claimant's share of the settlement is calculated in the same way, turning only on the type of information impacted and the state penalties available to California residents. Upon submission of a Claim Form, all claimants will have the ability to claim compensation for up to four hours of lost time, as well as out-of-pocket costs. SA, ¶2.3. Category One Settlement Class claimants who had their Social Security or financial information compromised will also have the ability to claim a cash payment and an option to receive credit monitoring; and California residents will be able to claim a cash payment as well. *Id.*, ¶¶2.2, 2.5. Cash payments to those who had their Social Security numbers and/or financial information compromised are equitable, given that those Settlement Class members are at an increased risk of identity fraud; Social Security numbers and financial information are sensitive and valuable types of Private Information that garner value within both legitimate and illegitimate markets. Cash payments to California Settlement Class members are also equitable given the civil penalties made available to California consumers under state statute.

Moreover, service awards that will be sought for the named Settlement Class Representatives are also fair, reasonable, and adequate. Such awards are common in class action settlements and are routinely approved "'to compensate named plaintiffs for the services they

provided and the risks they incurred during the course of the class action litigation.'" *Rotuna*, 2010 WL 2490989, at \*7; *Kritzer*, 2012 WL 1945144, at \*8.

  **D.**  **Notice Is Adequate**

  Under Rule 23(e)(1)(B): "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(e)(2)(B).

  The proposed Notices readily meet these requirements, and the Notice Program constitutes the best practicable notice under the circumstances of this case.  Likewise, the Notices use "plain English" to inform Settlement Class members of, among other things, the nature of the Settlement Class' claims, the essential terms of the settlement, the date, time, and place of the final approval hearing, how to object or opt-out of the settlement, and the binding effect of the settlement on Settlement Class members.  The Notices also contain information regarding counsel's request for fees and expenses, along with the URL of the Settlement Website where the fee brief and other important case documents will be able to be accessed.  SA, ¶1.34.  Thus, the Notice satisfies the specific requirements of Rule 23(c)(2)(B), which, in relevant part, provides that the notice shall apprise class members that "the court will exclude from the class any member who requests exclusion[, and] the time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B).

**V.**  **CONCLUSION**

  For the foregoing reasons, Plaintiffs respectfully request that preliminary approval of the settlement be granted in accordance with the terms set forth herein.

4880-0704-2771.v1

DATED:  July 29, 2024

**ROBBINS GELLER RUDMAN
    & DOWD LLP**
DOROTHY P. ANTULLIS\*
STUART A. DAVIDSON
NICOLLE B. BRITO


*s/ Dorothy P. Antullis*
DOROTHY P. ANTULLIS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dantullis@rgrdlaw.com
sdavidson@rgrdlaw.com
nbrito@rgrdlaw.com

**CHESTNUT CAMBRONNE, PA**
Bryan L. Bleichner\*
Jeffrey D. Bores
Christopher P. Renz
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone:  612/339-7300
612/336-2940 (fax)
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei\*
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone:  202/973-0900
202/973-0950 (fax)
hzavareei@tzlegal.com

*\*Interim Co-Lead Counsel*

**MARKOVITS, STOCK &DEMARCO, LLC**
Terence R. Coates (0085579)
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone:  513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com

- 28 -

4880-0704-2771.v1

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
Todd B. Naylor
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: 513/345-8297
513/345-8294 (fax)
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

*Interim Liaison Counsel*

**PEARSON WARSHAW, LLP**
Melissa S. Weiner
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: 612/389-0600
612/389-0610 (fax)
mweiner@pswlaw.com

**KOPELOWITZ OSTROW FERGUSON**
  **WEISELBERG GILBERT**
Jonathan M. Streisfeld
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: 954/525-4100
954/525-4300 (fax)
streisfeld@kolawyers.com

**GREENWALD DAVIDSON RADBIL PLLC**
Michael L. Greenwald
5550 Glades Road
Boca Raton, FL 33431
Telephone: 561/826-5477
954/525-4300 (fax)
mgreenwald@gdrlawfirm.com

*Interim Executive Committee*

- 29 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 29, 2024, I filed the foregoing document through the Court's ECF system, which will send notification of the filing to all counsel of record.

*s/ Dorothy P. Antullis*
DOROTHY P. ANTULLIS

4880-0704-2771.v1