# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re LUXOTTICA OF AMERICA, INC. DATA SECURITY BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:20-cv-00908-MRB<br><br>(Consolidated with Case Nos. 1:20-cv-00983 & 1:20-cv-01011)<br><br><u>CLASS ACTION</u><br><br>Judge Michael R. Barrett<br>Magistrate Judge Karen L. Litkovitz |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera, on behalf of themselves and the putative Settlement Class[1] they represent, respectfully move this Court to enter an Order:

- Granting final approval of the class action settlement between Plaintiffs and Defendant under Rule 23(e)(2) of the Federal Rules of Civil Procedure;

- Confirming the appointment of Settlement Class Representatives Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera as Settlement Class Representatives;

- Confirming the appointment of Dorothy P. Antullis of Robbins Geller Rudman & Dowd LLP, Bryan L. Bleichner of Chestnut Cambronne PA, and Hassan A. Zavareei of Tycko & Zavareei LLP as Settlement Class Counsel;

---

[1]   Unless otherwise noted, capitalized terms herein have the definitions set forth in the concurrently filed Settlement Agreement (defined below).

• Entering judgment dismissing the litigation with prejudice as to Defendant and without costs, except as provided in the Settlement Agreement;

• Discharging and releasing the Released Persons from all Released Claims;

• Permanently enjoining the institution and prosecution by Settlement Class Representatives and Settlement Class Members of any other action against the Released Persons in any forum in any way related to the Released Claims;

• Discharging and releasing Settlement Class Representatives, Settlement Class Members, and their counsel of Released Claims as provided in Section 1.38 of the Settlement Agreement; and

• Reserving and continuing exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation, and enforcement of the Settlement Agreement.

Plaintiffs' [Proposed] Order Granting Motion for Final Approval of Class Action Settlement is separately submitted with this Motion.  Defendant Luxottica of America, Inc. does not oppose this Motion.

This Motion is supported by the following Memorandum of Points and Authorities, the accompanying Declaration of Dorothy P. Antullis in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Antullis Declaration" or "Antullis Decl."), and the accompanying Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Kroll Declaration" or "Kroll Decl."), attached as Exhibit 1 to the Antullis Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Astrid Ela f/k/a Jessie Crockett, Michael Doyle, Phillip Gervais, John Gloss, Larry Payne (on behalf of his minor child, M.P.), and Donna Rivera (collectively, "Class Representatives" or "Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their Motion for Final Approval of Class Action Settlement, and request entry of the [Proposed] Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Order").

## I.     INTRODUCTION

This Settlement before the Court resolves claims related to an August 2020 data breach that compromised the confidential personal and health information of Plaintiffs and more than 800,000 similarly situated individuals (the "Data Incident").  An unauthorized party accessed Plaintiffs' and Settlement Class Members' personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"), including some or all of the following: full names, Social Security numbers, financial information, contact information, appointment dates and times, health insurance policy numbers, and doctor or appointment notes that may indicate information related to eye care treatment, such as prescriptions, health conditions, or procedures.  As part of the Settlement, Defendant has agreed to compensate Plaintiffs and Settlement Class Members for their injuries, including lost time and out-of-pocket expenses, and to make certain cash payments as described herein.

On July 29, 2024, Plaintiffs moved the Court to grant preliminary approval of the proposed Settlement, to approve the proposed notice plan as the best notice practicable under the circumstances, and to schedule a Final Approval Hearing.  *See* Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 80).  On August 5, 2024, the Court entered an order preliminarily approving the Settlement under Rule 23(e)(1), conditionally certifying a

- 1 -

Class, appointing Interim Settlement Class Counsel and Class Representatives, and directing notice to the Class. *See* Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (ECF 81). In doing so, the Court found the Settlement Agreement was "fair, reasonable, and adequate." *Id.*, ¶¶1, 9. And the Court found the Notice Plan "meets the requirements of Federal Rule Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons or entities entitled to notice." *Id.*, ¶9. It appointed Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator. *Id.* Kroll received contact information for 673,027 Class Members from the Defendants pursuant to the Notice Plan. Kroll Decl. at ¶5. Kroll then disseminated individual notice by mail, email, and media publication of the Settlement and its multiple benefits to the Class in accordance with the timeline set by the Order Granting Preliminary Approval. *Id.*, ¶¶5, 11. The Settlement website luxotticadatasettlement.com went live on September 4, 2024. *Id.*, ¶8. According to Kroll, the direct Notice reached 98.79% of the Class Members for whom it received contact information and at least 80.1% of the total Class. *Id.*, ¶15. The response of the Class has been overwhelmingly positive; minimal putative Class Members opted-out, and not a single Class Member has objected. *Id.*, ¶20.

Accordingly, because the Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation, Plaintiffs now respectfully request that the Court grant final approval of the Settlement, in addition to Plaintiffs' pending Motion for Attorneys' Fees, Costs, Expenses, Charges, and  Service Awards (ECF 83).

## II.    CASE SUMMARY

This lawsuit ("Action" or "Litigation") arises from the Data Incident where an unauthorized party accessed a subset of appointment records in The Appointment Book ("TAB"), Defendant's scheduling application software, between August 5-9, 2020. ECF 31, ¶47; ECF 80-

1, ¶4.  On August 28, 2020, Luxottica preliminarily concluded that the attacker might have accessed and acquired patient information.  ECF 31, ¶47.  In total, the attacker was able to access over 800,000 appointment records from Luxottica-owned practices and its 1,355 independent practices.  *Id.*, ¶50.  Defendant began notifying affected patients on October 28, 2020.  *Id.*, ¶¶48, 50.  According to Kroll, Luxottica's then-consultant, patients whose Social Security numbers or financial information were exposed were explicitly informed of the same in their notification letters.[2]  *Id.*  While Luxottica claimed it was "'not aware of any misuse of personal information or harm to patients as a result of this incident,' it could not rule out the possibility and advised victims of the Data Incident, including Plaintiffs, to 'remain vigilant, including by regularly reviewing your account statements.'"  *Id.*; ECF 31, ¶51.  Luxottica advised patients who had their Private Information compromised to "take steps to protect themselves, for example by closely monitoring notices from your health insurer and health care providers for unexpected activity."  *Id.*

Plaintiff Doyle filed *Doyle v. Luxottica of Am., Inc.*, No. 1:20-cv-908 (S.D. Ohio) on November 10, 2020.  ECF 1.  Several related complaints were filed shortly thereafter.  ECF 80-1, ¶5.  On December 21, 2020, the Court granted Plaintiffs' Unopposed Motion to Consolidate, with an amended Order issued on December 28, 2020.  ECFs 17, 21; ECF 80-1, ¶5.  The Court also entered an Order appointing Dorothy P. Antullis of Robbins Geller Rudman & Dowd LLP, Bryan L. Bleichner of Chestnut Cambronne PA, and Hassan A. Zavareei of Tycko & Zavareei LLP as Interim Lead Counsel for all Plaintiffs ("Interim Lead Counsel").  ECF 26; ECF 80-1, ¶6.  Plaintiffs filed their Consolidated Class Action Complaint ("CAC") on January 27, 2021.  ECF 31; ECF 80-1, ¶7

---

[2]  *Important Information Regarding Security Incident*, Kroll, https://luxottica.kroll.com (last visited Feb. 28, 2024).

On March 19, 2021, Defendant filed its Motion to Dismiss Consolidated Amended Class Action Complaint challenging Plaintiffs' Article III standing and contesting all 15 causes of action. ECF 34; ECF 80-1, ¶10.  Thereafter, the parties engaged in a full round of briefing, including the filing of a response, reply, and notices of supplemental authority.  ECFs 41, 43-44, 48; ECF 80-1, ¶10.  On August 19, 2021, the Court held oral argument on Defendant's motion to dismiss, which remains pending.  ECF 80-1, ¶10.  In the interim, the parties propounded, answered, and produced documents in response to substantial discovery requests, including Plaintiffs' ten interrogatories and 89 requests for production, Defendant's 22 interrogatories and 25 requests for production, third-party discovery directed at Luxottica's retailers, and deposition notices.  *Id.*, ¶11.  The parties met and conferred extensively for two years, via Zoom and lengthy email correspondence, attended at least nine status conferences before the Court, where they discussed outstanding discovery disputes, and submitted a detailed joint discovery dispute letter to the Court once impasse was reached.  *Id.*, ¶12.

Plaintiffs reviewed thousands of documents produced by Defendant, conducted the deposition of the eye care practitioner whose Luxottica TAB account was the subject of the Data Incident, and prepared to take a corporate representative deposition of Luxottica under Rule 30(b)(6), prior to negotiating the instant settlement.  *Id.*, ¶13.

The parties initially engaged in preliminary settlement negotiations in 2021, at the inception of litigation, with little success.  Antullis Decl., ¶6.  After almost three years of litigation, the parties agreed to mediate before Bennett Picker of Stradley Ronon Stevens & Young, LLP – a mediator with substantial experience handling data breach class action mediations.  *Id.*  The parties participated in an all-day remote mediation on September 28, 2023, with Mr. Picker.  *Id.*  During the mediation session, the parties agreed to terms forming the substance of the settlement.  *Id.*

Negotiations of attorneys' fees, costs, and expenses did not begin until agreement on behalf of the Settlement Class Members had been reached. *Id*. Informal mediation regarding attorneys' fees was held on November 8, 2023. *Id*. This settlement is the result of those extensive arm's-length negotiations.

## III.    SETTLEMENT TERMS

### A.    The Settlement Class

The Settlement Class is defined as: "All residents of the United States of America whose PII or PHI was compromised in the Data Incident" ("Settlement Class"). ECF 81, ¶2.

### B.    The Settlement Benefits

Under the terms of the settlement, Defendant has agreed to fund a non-reversionary common fund ("Common Fund") in the amount of $250,000 for Category One Benefits. SA, ¶¶1.2, 8.6. The Common Fund will be used to compensate and provide credit monitoring to the approximately 1,684 Settlement Class Members whose Social Security numbers and/or financial information was compromised as a result of the Data Incident. *Id.*, ¶1.4. Under the terms of the Agreement, those Settlement Class Members eligible under Category One may submit a claim for a cash payment, *pro rata* ("Category One Cash Payment"). *Id.*, ¶2.2. To the extent the total amount of the approved claims from the Common Fund at the end of the claims period exceeds or is less than the total amount remaining in the Common Fund, the Category One Cash Payment amount will be increased or decreased on a *pro rata* basis. *Id.* Lastly, Settlement Class Members eligible under Category One shall receive three-bureau credit monitoring for two years. *Id.*, ¶2.5.

Category Two Benefits will be made available to the approximately 827,770 Settlement Class Members whose PII and/or PHI were compromised as a result of the Data Incident, outside of Social Security numbers and/or financial information. *Id.*, ¶1.5. Settlement Class Members eligible under either Category One or Category Two shall have the right to make a claim for

reimbursement for time spent up to four hours at $20 per hour, upon attestation. *Id.*, ¶2.3. All Settlement Class Members may also claim reimbursement of monetary losses fairly traceable to the Data Incident, by submitting supporting documentation. *Id.*, ¶2.4.

Settlement Class Members who are eligible for either Category One or Category Two and who attest in writing that, at the time of the Data Incident, they were a California resident and further provide a valid California residential address may be eligible for a cash payment of $50. *Id.*, ¶2.2. Kroll, the Settlement Administrator, will make California settlement payments to claimants who are eligible under Category One from the Common Fund, and will make California settlement payments to claimants who are eligible under Category Two outside of the Common Fund, but subject to a $300 total per-claim cap. *Id.*

### C.   Notice and Administration Costs

As part of the Settlement, Defendants will pay all costs and expenses of Notice and Administration outside of and in addition to the Settlement Fund. S.A., ¶2.12.

### D.   Attorneys' Fees, Costs, and Expenses

On October 21, 2024, Class Counsel filed their Motion for Attorneys' Fees, Costs, Expenses, Charges, and Service Awards. ECF 83. In doing so, Plaintiffs respectfully asked the Court to approve $850,000 in attorneys' fees, litigation costs, expenses, and charges. *Id.* Plaintiffs further sought Court approval of service awards of $2,500.00 for each of the six Class Representatives, totaling $15,000 in service awards. *Id.* Not a single objection has been received to the fee and expense request or to the request for service awards. Antullis Decl., ¶16.

### E.   Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will only release and "be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement

- 6 -

as provided herein) in which any of the Released Claims are asserted." S.A., ¶6.1. The release is narrowly tailored to release only those claims that could have been brought against the "Released Parties."

## IV.    SETTLEMENT NOTICE AND ADMINISTRATION

On September 4, 2024, Kroll notified the Class through a combination of direct mail, email, publication notice and a settlement website. The Class consists of 829,454 individuals. Kroll Decl., ¶15. Kroll received email and/or mailing information for 673,027 Class Members from Luxottica during the process of sending notice to the Class. *Id.*, ¶5. Kroll mailed a written notice to Class Members for whom valid mailing addresses were known and sent an email notice to Class Members for whom valid email addresses were known. *Id.* The Notice was sent via mail to 562,992 Class Members, for whom a mailing address was available, a small portion of which were not delivered at first, as detailed in Kroll's declaration. *Id.*, ¶9. Kroll also successfully emailed notice to at least 98,044 Class Members for whom valid email addresses were known. *Id.*, ¶10. In total, Kroll reports that it estimates notice reached 664,901 of the Settlement Class Members identified on the Class List to whom notice was directly mailed or emailed. *Id.*, ¶15. For the Class Members with no current email or mailing information, a publication campaign was conducted by way of social media announcements beginning on September 13, 2024, and was substantially completed by October 13, 2024. *Id.*, ¶11. Over 19 million impressions were served via Facebook and Instagram. *Id.* Ads were targeted to users who have engaged with relevant pages and accounts including LensCrafters, For Eyes, and Pearle Vision Facebook and Instagram pages, among others. Additional impressions were targeted to a broader audience of adults 18 years of age or older. *Id.*

In addition, Kroll set up the Settlement Website containing copies of the Settlement Agreement, important case documents, and Claim Forms, in English and Spanish. *Id.*, ¶8. The Settlement Website also included a case timeline, which specified important dates and deadlines

for the Settlement, including the deadlines for Class Members to submit claims, file objections and submit requests for exclusion, and the date and time of the Final Approval Hearing. *Id.*  The ability to make claims was made easy by the fact that Class Members could submit their claims online and have the option for electronic payment (*id.*), or if they preferred, print out a physical claim form for filing via email or mail.  *Id.*, Ex. E; *see Treviso v. Nat'l Football Museum, Inc.*, 2024 WL 753560, at *3 (N.D. Ohio Feb. 12, 2024) (effectiveness of settlement distribution method supported final approval where class members could easily make claims online).[3]

The Court-approved notice plan has now been executed.  Under the terms of the Settlement Agreement and per the Preliminary Approval Order (ECF 81), Class Members have had ample time to review the terms of the Settlement and object/exclude themselves, or to file a claims form. And as discussed below, the response rate has been successful.

## V.      POSITIVE RESPONSE FROM SETTLEMENT CLASS MEMBERS

The deadline for Class members to submit a Claims Form is January 2, 2025.  As of December 16, 2024, Kroll has received nineteen (19) Category Two Claim Forms through the mail, and twenty-five (25) Category One and 6,445 Category Two Claim Forms filed electronically through the Settlement Website.  Kroll Decl., ¶17.  This preliminary claims data suggests the approved Category One claims, and California Class Member claims, may receive a full cash payment benefit, and Category One payments will likely be prorated upwards.  As is standard practice, Kroll is in the process of conducting a complete review and audit of all Claim Forms received; because of that audit and the open claims window, the total number of valid claims received may change.  *See* Kroll Decl., ¶¶16-17.  Class Counsel will be prepared to provide the Court with more finalized numbers at the Fairness Hearing.

---

[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

Class Members were reached by way of a thorough campaign via their mail and email addresses, and a vigorous social media campaign, which satisfies due process and supports approval. *In re Se. Milk Antitrust Litig.*, 2012 WL 2050865, at *2 (E.D. Tenn. June 6, 2012) ("when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process.). Moreover, the Sixth Circuit and other federal appellate district courts have approved settlements with similar claim rates. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2018 WL 4520931, at *5 (6th Cir. May 24, 2018) (affirming approval of class settlement with class response rate of less than one percent); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-15 (W.D. Mo. 2017) (collecting cases approving settlements "where the claims rate was less than one percent").

November 13, 2024, was the deadline for Settlement Class members to request exclusion from the Settlement, and November 4, 2024 was the deadline to object. Of the 829,454 Class members, only six, or less than 0.0008% submitted timely exclusion requests. *See* Kroll Decl., ¶¶ 15, 20. There were **zero** objections to the Settlement. *See id*. This very low exclusion rate and the lack of objections are persuasive evidence that Settlement Class Members favor the proposed settlement; take no issue with the fairness and adequacy of the proposed settlement; and approve of Interim Settlement Class Counsel's requests for reasonable attorneys' fees, expenses, and Class Representative service awards. *See, e.g.*, *In re E. Palestine Train Derailment*, 2024 WL 4367524, at *2 (N.D. Ohio Sept. 27, 2024) (granting final approval to class settlement where .083% opted out and only 84 individuals objected out of class of 463,271); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *3 (N.D. Cal. May 10, 2019) ("The small number of objections and opt outs supports that the settlement and plan of allocation are fair, reasonable, and adequate."); *In re Transpacific Passenger Air Transp. Antitrust Litig.*,

2018 WL 6267840, at *4 (N.D. Cal. Sept. 24, 2018) (noting that low objection and opt-out rates may "alone suggest[] that the settlements are fair").  The "inclusion rate of over 99% is exceptional."  *Gresky v. Checker Notions Co.*, 2022 WL 3700739, at *6 (N.D. Ohio Aug. 26, 2022).

## VI.    ARGUMENT

### A.    The Court Should Certify the Settlement Class Under Rule 23(e)(2)

The Court has already found that "pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii) . . . it will likely be able to certify the Class for settlement purposes [because the Class likely meets all relevant requirements of Rules 23(a) and 23(b)(3)]."  Preliminary Approval Order (ECF 81) at ¶4. Nothing has changed in the interim that would require it to disrupt its earlier finding.

#### 1.    The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23(a) requires numerosity, commonality, typicality, and adequacy.  The Sixth Circuit has also adopted an implicit ascertainability requirement for classes certified under Rule 23(b)(3). *See In re Nat'l Prescription Opiate Litig.*, 2021 WL 320754, at *3 (N.D. Ohio Feb. 1, 2021) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).

Rule 23(a)(1): Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  Here the Settlement Class contains roughly 829,454 Settlement Class Members, clearly satisfying numerosity.  *See* Kroll Decl., ¶ 15; *e.g.*, *Snelling v. ATC Healthcare Servs. Inc.*, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (a class of 40 or more is generally sufficiently numerous); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010) (1,800-member class easily satisfied numerosity).

Rule 23(a)(2): Commonality requires that class members share common questions of law or fact.  To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke."  *McKnight v. Erico Int'l Corp.*, 655 F. Supp.

- 10 -

3d 645, 656-57 (N.D. Ohio 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, Plaintiffs' and Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Plaintiffs' and Settlement Class Members' Private Information.  The resolution of that single inquiry turns on evidence that does not vary from Settlement Class Member to Settlement Class Member, and so it is a question that can be fairly resolved – whether through litigation or settlement – for all Settlement Class Members at once.

Rule 23(a)(3): Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).  Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement.  Specifically, Plaintiffs' claims are typical of those of the putative class because they arise from the same Data Incident and from the same legal duty Defendant had to secure the PII and PHI of Plaintiffs and Settlement Class Members, creating a clear nexus between Plaintiffs' claims and those of the Settlement Class Members.

Rule 23(a)(4): Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Sixth Circuit, there are two criteria for determining adequacy: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."  *McKnight*, 655 F. Supp. 3d at 657 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976)).

Here, Plaintiffs have no conflicts with absent Settlement Class Members and are equally

invested in challenging Defendant's allegedly inadequate data security. Antullis Decl., ¶19. Plaintiffs understand their duties and have agreed to consider only the interests of absent Settlement Class Members. *Id.* They have also participated actively in the case, including by engaging in discovery, producing sensitive documents, and communicating with their counsel regarding the strategy and status of the litigation. *Id.*

Moreover, they selected and are represented by experienced class attorneys who specialize in privacy litigation, who were appointed on an interim basis by the Court to represent putative Settlement Class Members' interests. *See id.*, ¶18. Interim Settlement Class Counsel also have no conflicts with Plaintiffs or Settlement Class Members, and have prosecuted this Action vigorously, and successfully, on behalf of the Settlement Class Members, and will continue to do so. *See id.*

### 2. The Settlement Class Meets the Requirements of Rule 23(b)(3)

<u>Predominance</u>: "To meet the predominance requirement [under Rule 23(b)(3)], a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012). Here, the Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend, first and foremost, on common questions regarding whether Defendant used reasonable data security policies to protect their Private Information. That question can be resolved using the same evidence for all Settlement Class Members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). And, while the extent of individual Settlement Class Members' damages may vary in degree, that variance does not defeat a finding of predominance for the Settlement Class as a whole. *See McKnight*, 655 F. Supp. 3d at 658 (citing *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020)).

- 12 -

<u>Superiority</u>: The Rule 23(b)(3) superiority requirement concerns whether a class action is a better method than individual litigation for adjudication of a claim. *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010). Resolution of the issues here through individual actions is impracticable: the amount in dispute for individual Settlement Class Members is too small given that the average amount each member will recover will be approximately the same as the Court's filing fee, the technical issues involved are too complex, and the required expert testimony and document review too costly. Thus, class-wide resolution of Class Members' claims is plainly favorable as compared to other means of adjudication.

Additionally, the factors listed in Rule 23(b)(3) support a finding of superiority. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). There is no evidence that members of the Settlement Class desire to bring litigation separately, and there is no related pending litigation. Also, concentrating litigation in one forum will foster efficiency and minimize expenses. *See McKnight*, 655 F. Supp. 3d at 659.

<u>Ascertainability</u>: Rule 23(b)(3) classes in the Sixth Circuit must also meet an implied ascertainability requirement (*see Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 461-66 (6th Cir. 2017)), and must include a class definition that is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." Quoting *Young*, 693 F.3d at 537-38; *McKnight*, 655 F. Supp. 3d at 657. Here, Settlement Class Members can be identified based on Defendant's records, which contain information sufficient to determine whether the Settlement Class Member's appointment records were impacted and whether Social Security numbers, financial information, or other information was involved. *See id.* (finding ascertainability met where defendant's software was able to identify settlement subclasses); SA, ¶8.1.

For the reasons set forth above, the Court should find that the Settlement Class and its

- 13 -

Representatives meet all relevant requirements of Rule 23(a) and (b)(3).

**B.      The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)**

A court may approve a proposed class settlement only "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see also McKnight*, 655 F. Supp. 3d at 661. The Settlement satisfies all four of these factors. In the Sixth Circuit, additional considerations guide the Rule 23(e)(2) inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). However, while the *UAW* factors "might have relevance on any particular set of facts[,] [w]here they do not, there is no occasion to consider them." *McKnight*, 655 F. Supp. 3d at 661. Thus, while all of the *UAW* factors may not be relevant to the facts of the settlement at issue here, Plaintiffs note that the settlement does nonetheless satisfy both the *UAW* and the Rule 23(e)(2) factors.

**1.      Settlement Class Representatives and Interim Settlement Class Counsel Adequately Represent the Class Under Rule 23(e)(2)(A)**

Rule 23(e)(2)(A) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)[.]" 4 William B. Rubinstein et al., *Newberg & Rubenstein on Class Actions* §13:49 (6th ed. 2022). Interim Settlement Class Counsel and Settlement Class Representatives fought hard to protect the interests of the Settlement Class Members, as evidenced by the significant compensation available to the Settlement Class through the proposed settlement. Interim Settlement Class Counsel

prosecuted this Action and its fair resolution with vigor and dedication since filing their clients' complaints.  *See* Fed. R. Civ. P. 23(e)(2)(A).  Interim Settlement Class Counsel undertook significant efforts to uncover the facts to continuously prosecute and refine the Settlement Class' claims.  Interim Settlement Class Counsel also engaged in robust Rule 12 motion practice – researching, drafting, and filing thorough opposition briefs to Defendant's motion to dismiss. ECFs 41, 43-44, 48; ECF 80-1, ¶10.  Likewise, Settlement Class Representatives played an integral role to the litigation by consulting with counsel, who provided them with important information, including documents crucial to the litigation.  *See* Antullis Decl., ¶19.  Moreover, Interim Settlement Class Counsel and the Settlement Class Representatives believe that the settlement is fair, reasonable, and adequate for the many reasons explained herein.  Accordingly, both Settlement Class Representatives and Interim Settlement Class Counsel satisfy Rule 23(e)(2)(A).

### 2. The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Under Rule 23(e)(2)(B)

Rule 23(e)(2)(B) requires that the parties negotiate the settlement at arm's-length, which inquiry "aims to root out . . . 'collusive settlements.'"  *Newberg* §13:50; *UAW*, 497 F.3d at 631. Here, resolution was clearly produced by way of good faith, informed, and arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action.  At each stage of the litigation, the parties engaged in an adversarial bargaining process.  First, before settling, the parties exchanged substantial discovery and briefing.  *See, e.g.*, ECFs 41, 43-44, 48.  Second, the parties reached the settlement through a neutral mediator and then spent the following seven months discussing and disputing the final terms of the Settlement Agreement.  *See* Antullis Decl., ¶6; *see Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and

reasonable").

Indeed, the proposed settlement terms do not point to collusive negotiations.  Attorneys'
fees and service awards were negotiated only following the settlement of all other material terms
for the Settlement Class – with the Court being the final decision maker; no portion of the Common
Fund for Category One Benefits will revert to Defendant (SA, ¶8.7), and there is no cap on the
total amount that can be claimed for Category Two Benefits..  Moreover, it took the parties two
separate attempts at settlement negotiations, separated by almost three years of active litigation,
two separate mediations with Mr. Picker, and months of after-mediation negotiating to reach and
execute an acceptable settlement.  *See* Antullis Decl., ¶6.  If anything, the first efforts at negotiating
settlement reinforced the parties' resolve to litigate the issues in dispute, and we actively litigated
for another two years.  *Id.*  The 2023 mediations ultimately proved successful, but only after hard-
fought negotiations, starting weeks prior to the day of mediation and continuing for over seven
months to reduce the settlement to writing.  *See id*.

Settlements such as this, resulting from formal mediations conducted by experienced
mediators, indicate the absence of fraud or collusion.  *See Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269, 277 (6th Cir. 2016); *Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D.
Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of,
*inter alia*, "an involved mediation before an experienced mediator").  In sum, the settlement is fair
and not the subject of fraud or collusion and the Court will be able to approve it.

### 3.    The Relief Provided to the Settlement Class is Adequate Under Rule 23(e)(2)(C)

In assessing whether the relief provided to the Settlement Class is adequate, the Court must
take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
proposed method of distributing relief to the class, including the method of processing class-

member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C).

Costs, risks, and delay of trial: The settlement benefits here are impressive given the inherent uncertainties and "the costs, risks, and delay of trial and appeal[.]" Fed. R. Civ. P. 23(e)(2)(C)(i). As discussed above, consolidation and briefing on the motion to dismiss, as well as ample discovery, was conducted prior to engaging in the 2023 settlement negotiations. Class Counsel relied on their experience analyzing the evidence and litigating the key legal issues in major data breach cases to assist in evaluating the merits of this case. *See* Antullis Decl., ¶18. This Settlement not only avoids the clear obstacles present in litigating and trying individual data breach cases but assures that Plaintiffs timely receive compensation. Even if individual Plaintiffs achieved successful judgments, the years of delay in achieving that result, would only further injure Plaintiffs and Settlement Class Members. Settlement is the more prudent and expeditious route. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See id.*, ¶19. Moreover, the Settlement serves the public interest in resolving a nationwide class action to benefit Plaintiffs and Class Members and conserves the Court's resources by properly avoiding trial and appeals.

Effectiveness of the proposed method of distributing relief to the Class: This Settlement offers comprehensive relief to the Class, as described above. Moreover, the "proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(C)(ii), is effective. Claims processing here: (1) facilitates filing legitimate claims; and (2) is not unduly demanding. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. With respect to the method of processing Class Member claims, Class Members were

able to easily file claims online and could select between a number of options, most of which required only attestation. This ease of making a claim supports approval of the Settlement. *Treviso*, 2024 WL 753560, at *3. Moreover, the Plan of Allocation is based on neutral, objective criteria, is the product of extensive and informed investigation and analysis, and is designed to ensure a fair distribution of the Settlement Funds.

Kroll is a highly qualified Notice and Claims Administrator. Kroll has demonstrated success in administering numerous data breach settlements and has undoubtedly been an effective Notice and Claims Administrator in this action. Kroll has successfully disseminated Notice, with no objections and just six opt-outs received. Kroll Decl., ¶20. And, even so, there will be no reversions of the Category One common fund to Luxottica because all Settlement Funds money, net of fees, expenses, and service awards, shall be distributed to the Settlement Class.

Terms of attorney's fees: As discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, Charges, and Service Awards (ECF 83), the Settlement is also fair, reasonable, and adequate with respect to the "terms of any proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Interim Settlement Class Counsel has requested $850,000, which is reasonable when assessed against Plaintiff Counsel's lodestar and modest in comparison to percentage-of-the-fund requests, both in this Circuit and nationwide. The Court's ultimate decision whether to award attorneys' fees, expenses, and service awards does not impact or terminate the underlying Settlement Agreement. The terms of Interim Settlement Class Counsel's fee request thus satisfy Rule 23(e)(2)(C)(iii) and should be approved.

Absence of side agreements: The fairness, reasonableness, and adequacy of a settlement must also consider "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement

identifying any agreement made in connection with the proposal." Here, where the only such agreement is the Settlement itself, there is no risk that "related undertakings . . . may have influenced the terms of the settlement[,]" and this sub-factor supports the adequacy of relief. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other Under Rule 23(e)(2)(D)

This factor "ensure[s] that similarly situated class members are treated similarly[.]" *Newberg* §13:56. In evaluating the fairness of a class settlement, Ohio district courts also ensure that the distribution of settlement proceeds is equitable. "Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate." *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021). Here, similar to *Harsh*, each qualified claimant's share of the settlement is calculated in the same way, turning only on the type of information impacted and the state penalties available to California residents. Upon submission of a Claim Form, all claimants will have the ability to claim compensation for up to four hours of lost time, as well as out-of-pocket costs. SA, ¶2.3. Category One Settlement Class claimants who had their Social Security or financial information compromised will also have the ability to claim a cash payment and an option to receive credit monitoring; and California residents will be able to claim a cash payment as well. *Id.*, ¶¶2.2, 2.5. Cash payments to those who had their Social Security numbers and/or financial information compromised are equitable, given that those Settlement Class Members are at an increased risk of identity fraud; Social Security numbers and financial information are sensitive and valuable types of Private Information that garner value within both legitimate and illegitimate markets. Cash payments to California Settlement Class Members are equitable given the civil penalties made available to California consumers under state statute. The proposed allocation formula is data

driven, uses similar data for all class members, ensures that recovery levels correspond to harm levels, and raises no Rule 23 red flags. The Settlement thus satisfies Rule 23(e)(2)(D).

### C. The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(1)

Under Rule 23(g)(2), a court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)." In appointing Interim Settlement Class Counsel under Rule 23(g)(3), Court considered the time, effort, and resources that Dorothy P. Antullis, Brian L. Bleichner, and Hassan A. Zavareei, and their three firms have expended in representing the Settlement Class, as well as their cumulative many decades of experience in litigating and settling class actions on behalf of plaintiffs in data breach cases and a variety of other cases. *See* Antullis Decl., ¶18. The Court concluded that Interim Settlement Class Counsel would fairly and adequately represent the interests of the Settlement Class. It should now confirm Dorothy P. Antullis, Brian L. Bleichner, and Hassan A. Zavareei and appoint Dorothy P. Antullis, Brian L. Bleichner, and Hassan A. Zavareei as Co-Lead Settlement Class Counsel.

## VII. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval of class action settlement, and enter the proposed Order attached as **Exhibit A**.

DATED: December 16, 2024

**ROBBINS GELLER RUDMAN & DOWD LLP**
DOROTHY P. ANTULLIS*
STUART A. DAVIDSON
NICOLLE B. BRITO

*s/ Dorothy P. Antullis*
DOROTHY P. ANTULLIS

- 20 -

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dantullis@rgrdlaw.com
sdavidson@rgrdlaw.com
nbrito@rgrdlaw.com

**CHESTNUT CAMBRONNE, PA**
Bryan L. Bleichner*
Jeffrey D. Bores
Christopher P. Renz
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone:  612/339-7300
612/336-2940 (fax)
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei*
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone:  202/973-0900
202/973-0950 (fax)
hzavareei@tzlegal.com

*Interim Co-Lead Settlement Class Counsel*

**MARKOVITS, STOCK &DEMARCO, LLC**
Terence R. Coates (0085579)
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone:  513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
Todd B. Naylor
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: 513/345-8297
513/345-8294 (fax)
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

*Interim Liaison Counsel*

**PEARSON WARSHAW, LLP**
Melissa S. Weiner
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone:  612/389-0600
612/389-0610 (fax)
mweiner@pswlaw.com
jbourne@pswlaw.com

**KOPELOWITZ OSTROW FERGUSON
  WEISELBERG GILBERT**
Jonathan M. Streisfeld
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone:  954/525-4100
954/525-4300 (fax)
streisfeld@kolawyers.com

**GREENWALD DAVIDSON RADBIL PLLC**
Michael L. Greenwald
5550 Glades Road
Boca Raton, FL 33431
Telephone:  561/826-5477
954/525-4300 (fax)
mgreenwald@gdrlawfirm.com

*Interim Executive Committee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 16, 2024, I filed the foregoing document through the Court's

ECF system, which will send notification of the filing to all counsel of record.


        *s/ Dorothy P. Antullis*
        DOROTHY P. ANTULLIS